The opinion of the court was delivered by
Blanchard, J.
Plaintiff, a mortgage creditor, proceeded to the •collection of his claim via executiva, and the property hypothecated was advertised for sale.
Some ten days prior to the sale, Thos. H. Sampson made himself a party to the proceedings by filing a petition of intervention and third opposition, and it is with him alone that plaintiff has to deal in ¡this controversy. He set forth averments upon which was based a ¡prayer that the order for seizure and sale be set aside, or, in the ¡alternative, that the sale be restricted to an undivided one-third interest in the property, and, as to this interest and its proceeds, he be decreed to have a lien and privilege superior to that of plaintiff. He made no effort to stop the sale by injunction. It took place, and the property was adjudicated to the plaintiff for five thousand two hundred dollars — a sum about sufficient to pay the debt with costs.
Later the case came on for trial on the intervention and third op *1003 position. There was judgment rejecting the demand of intervenor and dismissing his suit. He appealed, and in this court he was met by a plea of prescription filed here by appellee. The prescriptions tendered were: 1. That of five years under O. C. 3542, barring demand by forced heirs for reduction of excessive donations. 2. That of ten years relating to inscription of mortgages.
Whereupon, on motion, the case was remanded for the sole purpose of trying the plea of prescription. It was tried and judgment was rendered sustaining it, and dismissing the intervention.
Intervenor again appeals.
He is here, therefore, with two judgments against him — one rejecting his demand on its merits; the other rejecting it as barred by prescription.
The facts pertinent to the inquiry are these:
William R. Crane died in 1883. He left a last will and testament, olographic in form, which named his wife, Susan Ann Sauffiy, universal legatee and executrix. The will was admitted to probate, the executrix was ordered to be confirmed, and she took the oath of office. No letters of executorship, however, appear in the succession record, and no inventory is found there, though there is an order for one.
At his death Crane owned the property subsequently mortgaged to plaintiff, Leon Joubert, situated on Annunciation and Market streets, New Orleans, and one other piece of real estate situated on Constance street. He had acquired this property long prior to his marriage with Susan Ann Sauffiy. He left as issue of his marriage with her two sons and a daughter. The oldest son, Jas. W. Crane, of age, died the year following his father, unmarried and iütestate.
His succession was opened; his mother and surviving brother and sister accepted the same as his heirs, and were put in possession of his property.
The other son and daughter, also of age, while forced heirs of W. R. Crane, took no steps to assert their rights as against the will of their father, which had instituted their mother his universal legatee. On the contrary, they did more than acquiesce in the terms of the will — they appeared, in 1885, before a notary public and two witnesses, and executed an act referring to themselves as forced heirs, yet recognizing the will and its probate, and renouncing all claims, to any part of the property left by their father in favor of their *1004 mother, especially investing her with the full ownership thereof. Prior to this,, the widow of W. R. Orane had become the wife of Thos. H. Sampson, intervenor herein, and the;daughter, Sarah Elizabeth Orane, had become the wife of John Ermon, who joined in the act of renunciation aforesaid, authorizing his wife.
Four years later, in 1889, the widow of W. R. Crane, then Mrs. Sampson, and authorized by him, filed a petition in the succession of her deceased husband, asking to be recognized as universal legatee and put in possession of all the property left by W. R. Orane at his death. A decree to this effect was entered, and the same was registered as a muuiment of title in the conveyance office. This ended the succession of W. R. Orane.
In 1891 Mrs. Sampson appeared before one of the judges of the Oivil District Oonrt and obtained from him an authorization to contract a loan of money and give a mortgage to secure same, and, thereupon, executed the note and mortgage declared on in this suit. The act of mortgage recites she is assisted and authorized therein by her husband, Thos. H. Sampson, and he signs the act as well as the note with her, in token of such authorization. It also recites that the property mortgaged was acquired by Mrs. Sampson as universal legatee of her deceased husband, William R. Orane, and refers to the judgment of the District Oourt recognizing her as such legatee. It further stipulates that should the note not be paid at maturity, she, the mortgagor, authorized the holder thereof “ to cause all and singular the property hereinbefore described and mortgaged to be seized and sold,” etc.
And, lastly, it recites that, as per certificate annexed, there were no mortgages affecting the property, except an inscription for drainage taxes and another for city taxes.
Notwithstanding all this, when the holder of the note, who is the original mortgagee, brings this suit against the wife to enforce payment of the debt, Sampson, the husband, a party to the aforesaid mortgage and to the wife’s application to the court in the former husband’s succession, to be recognized as owner and to be put in possession of the very property mortgaged, intervenes in the suit contesting the wife’s full ownership of the property, and averring his superior right over the seizing creditor to be paid out of the proceeds thereof on a claim of his own.
Considering his connection with the transactions referred to the proposition he thus advances is somewhat unique.
*1005 The claim he asserts is based upon these facts: When William R. Orane died he owed a mortgage indebtedness to the Citizens Bank upon the real property he owned. In 1885 his widow, who meanwhile had contracted marriage with intervenor, offered the bank a compromise settlement of its claims, which the bank accepted and a notarial act of compromise and settlement was entered into. The bank’s claims were settled for six thousand dollars; which were paid, releases of the mortgages were obtained, and the bank reconveyed to Mrs. Sampson title to the property which it had acquired at tax sales thereof. Sampson himself was a party to the act of compromise, release and conveyance, appearing therein as assisting and authorizing his wife.
It is not recited anywhere in the act that Sampson advanced the money out of his own funds to effect .this settlement with the bank, nor is he referred to therein in any way as having or to have any claim in or on the property in any respect.
On the contrary, it is distinctly averred that Mrs. Sampson offe g d to settle by compromise the liabilities of her dead husband to the bank, and the six thousand dollars was received by the bank “ in full payment, settlement and liquidation ” of the indebtedness, and then and there the bank formally granted “ a full, complete and entire release ” of the mortgage, and gave authority to the Recorder of Mortgages to cancel and erase the same on the records of his office.
All this clearly and absolutely negatives the idea that any transfer or subrogation of the bank’s claims and mortgage to Sampson, the husband, was intended or was made.
It was on this same day, however, and before the same notary, that Benjamin P. Orane and his sister, Mrs. Ermon, children and forced heirs of W. R. Orane, deceased, appeared and executed in favor of their mother, Mrs. Sampson, the act of renunciation of their interest in their father’s succession, hereinbefore referred to. After reciting in the act that their intention was their mother should have and enjoy the property “in full ownership,” it was set forth that they were aware the obligations resting on the property in favor of thp Citizens Bank, and certain other obligations resting thereon in favor of the city of New Orleans, had “ been wholly paid, settled and liquidated, and the said property released ” from the mortgage of the bank and the tax privilege of the city, with money furnished *1006 by Thos. H. Sampson. Recognizing their obligation to Sampson for this, they proceeded in the act to bind themselves, in the event of their mother’s death, to make no claim to the property as forced heirs of their mother, until the whole amount paid by Sampson, as above, had been reimbursed to him.
Neither the bank, the city, Mrs. Sampson, nor her husband, were parties to this act.
By no possible rule of reasonable construction can anything said or done therein be interpreted as preserving to Sampson and keeping alive in him as subrogee the claims and mortgage of the bank and the tax privilege of the city. It is beyond dispute that the intention of all parties was these debts were to be considered settled in full. If Sampson did not give the money outright to his wife to lift these incumbrances on her property, the most that can be claimed for him is that he advanced it to her for the purpose as an ordinary loan, which she may still owe him — a loan to which the mortgage and privilege creditors were parties or privies, and in respect to which they consented to no subrogation, nor did that from which subrogation results under the law. O. 0. 2160.
After these old claims are paid in full, as recited, after the mortgage and privilege securing the same have been canceled on the records by direction of all parties, without any reservation whatever in Sampson, and after he has appeared with his wife in an act hypothecating part of the property, thus unencumbered, to the plaintiff, it would be remarkable indeed if he could be heard in a court of justice to deny plaintiff’s right to collect his debt.
Nor is there any doubt or uncertainty as to the law governing the case. The doctrine of estoppel applies. It has been held that where a husband joins and authorizes his wife in the execution of a mortgage on her separate property, he can not afterward, when the mortgage is sought to be enforced, set up by way of defence that the property mortgaged was community property and the wife was without authority to encumber it. Having signed the mortgage himself he can not be permitted to deny or gainsay his own solemn act. Stewart vs. Robinson, 23 An. 83.
One who by silence, when it was his duty to speak, decoys another into particular conduct, can enforce no advantage thereby acquired. Meux vs. Martin, 5 An. 108.
Applying the doctrine announced in these authorities to the case *1007 at bar, it is clear that the pretensions of the intervenor can not be sustained.
This view renders it unnecessary to decide the question of prescription raised in the case.
Newman vs. Cooper, 46 An. 1485, relied on by intervenor, has no applicability as an authority to the facts of the instant case, and if it did have, the present case comes directly within the exception set forth on page 1491 of the reported decision of the case.
The intervenor here did “some act which operated an inducement to the plaintiff to alter his previous position and accept defendant’s mortgage.”
Judgment affirmed.